UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHAD RAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:16-cv-1853-WTL-MPB |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Chad Ray requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Ray's application for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

### I. PROCEDURAL HISTORY

Ray protectively filed for DIB and SSI on July 9, 2013, alleging he became disabled on March 10, 2012. Ray's application was denied initially on October 3, 2013, and again upon reconsideration on December 11, 2013. Following the denial upon reconsideration, Ray requested and received a hearing in front of an Administrative Law Judge ("ALJ"). That hearing, during which Ray was represented by counsel, was held on December 10, 2014, before ALJ Karen Sayon by video conference. The ALJ issued her decision on January 22, 2015,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

denying Ray's claim. Ray requested review by the Appeals Council, and the Appeals Council denied the request for review on May 20, 2016. Ray then filed this timely appeal.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i).[2] At step two, if the claimant does not have a "severe" impairment (*i.e.*, one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled, 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to SSI sections only, with the exception of DIB section cites where they provide information beyond that found in the SSI sections.

not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citation omitted). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176 (citations omitted).

### III.     ALJ SAYON'S DECISION

ALJ Sayon determined at step one that Ray had not engaged in substantial gainful activity since March 10, 2012, the alleged disability onset date. Record at 12. At step two, the ALJ concluded that Ray had the severe impairments of lumbar degenerative disc disease with radiculopathy and obesity, as well as hypertension and status post-surgery on his right shoulder and left knee, which she determined were non-severe impairments. *Id.* At step three, the ALJ determined that Ray's impairments did not meet or medically equal listing 1.04. R at 13. At step four, the ALJ determined that Ray had the following residual functional capacity ("RFC"):

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can occasionally climb, balance, stoop,

3

> kneel, crouch and crawl; he cannot tolerate concentrated exposure to vibration; and he should have the ability to use a cane while ambulating.

R. at 14.

The ALJ determined that Ray could not perform past relevant work, but would be capable of performing work that exists in significant numbers in the national economy. R. at 18-19. Accordingly, the ALJ concluded that Ray was not disabled as defined by the Act.

### IV. EVIDENCE OF RECORD

The ALJ's decision in combination with Ray's brief (Dkt. No. 24) aptly set forth the medical evidence of record, which need not be recited here. Specific facts are introduced in the discussion section below where relevant.

### V. DISCUSSION

In his brief in support of his Complaint, Ray argues that the ALJ (1) erred in analyzing Listing 1.04(A); (2) erroneously gave no weight to Dr. Ungar-Sargon's opinion regarding Listing 1.04(A); and (3) failed to properly consider Ray's work history and subjective complaints when examining his credibility.

#### A. Listing 1.04(A)

Ray argues that the ALJ "failed to provide a reasonable explanation as to why material evidence was ignored" in the ALJ's analysis of listing 1.04(A). Dkt. No. 24 at 15. Ray contends that the "ALJ is just flat out wrong in stating that there is no medical evidence supporting motor loss or sensory loss as required by 1.04(A)." *Id.* at 16 (citing R. at 13). In particular, Ray argues that, in her analysis regarding Listing 1.04(A), the ALJ failed to acknowledge evidence of Ray's lumbar fusion resulting in chronic lumbar syndrome, his positive straight leg raising test results, an EMG dated September 24, 2013, that showed chronic lumbar radiculopathy, which was worse on his left side, and that he used a cane in his dominant hand. *Id.* at 16-17. In the section of her

4

opinion dedicated to discussing whether Ray's impairments met or equaled a listing, the ALJ did not examine the medical evidence in any depth. As Ray notes, the ALJ stated generally that "the medical records do not include evidence of motor loss, sensory loss or reflex loss, as required by 1.04(A)." *Id.* at 16. This absence of evidence provides support for her determination that Ray's impairments did not meet or equal listing 1.04(A).

Listing 1.04(A) requires "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," not motor loss with associated muscle weakness, as Ray suggests. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A); *see also* Dkt. Nos. 24 at 15-16 & 26 at 4. Ray argues that there is medical evidence of "motor loss with associated muscle weakness" and separately, evidence of sensory loss. *See* Dkt. No. 26 at 4-5. Ray points to evidence in the record showing that he used a cane to walk; had limited ambulation and irregular, antalgic gait; was unsteady, able to walk on heels with difficulty, and unable to walk on toes; had "tenderness to the lumbosacral spine[,] and had a positive straight leg raising sign."[3] Dkt. No. 26 at 5. This evidence does not show atrophy with associated muscle weakness or muscle weakness. The record evidence cited by Ray, however, contains specific reference to muscle strength, evaluating his muscle strength as "5/5 in all muscle groups tested." Dkt. No. 26 at 5 n. 20 (citing R. at 296). Ray has not directed the Court to evidence that he experienced "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," as required by listing 1.04(A).

Furthermore, the ALJ considered all of the evidence Ray alleges she "failed to acknowledge . . . in her analysis that Ray did not meet listing 1.04(A)." Dkt. No. 24 at 17. She

---

[3] Ray also states that he was "only able to bend over 50%," but the record evidence states that "Patient is able to bend over 50%." *See* R. at 295.

5

did so in the section of her opinion discussing Ray's RFC. In addition to other evidence in the medical record, the ALJ discussed Ray's surgeries (R. at 14 & 15), "positive straight leg raises" (R. at 15 & 16), "chronic lumbar radiculopathy, worse on the left" (R. at 16), and the fact that Ray used a cane in 2014 (R. at 16). That evidence, however, does not demonstrate that Ray met listing 1.04(A)'s requirements.

The ALJ's statement regarding the lack of evidence of motor loss, sensory loss, or reflex loss when combined with her thorough discussion of the medical record in her opinion's RFC section builds the "accurate and logical bridge" between the evidence and the ALJ's conclusion that Ray's impairments did not meet or equal listing 1.04(A). *See Blakes v. Barnhart*, 331 F.3d 565, 568-69 (7th Cir. 2003). Accordingly, the ALJ did not err in determining that Ray's impairments did not meet or equal listing 1.04(A).[4]

Ray also argues that "[t]he ALJ failed to accord proper weight to Ray's treating physician's opinion." Dkt. No. 24 at 13. Though not so clearly articulated in the briefing, it appears that Ray contends that controlling weight should have been given to Dr. Ungar-Sargon's opinion that Ray's impairments met listing 1.04(A). *See id.* at 13-14. As Ray correctly notes, "[t]he ALJ may not simply ignore the records to which Dr. Ungar[-Sargon] referred in his opinion to support [his conclusion that Ray's impairments met listing 1.04(A)] and then willy-nilly state that [his opinion] is conclusory." Dkt. No. 24 at 14. The ALJ, however, did not ignore Dr. Ungar-Sargon's records: She cited to them and relied on them in making her determination. *See* R. at 15-16 (ALJ's citations to Dr. Ungar-Sargon's treatment records). Nor

---

[4] The Commissioner argues that Ray did not meet his burden of showing that his impairments satisfied the duration requirement for listing 1.04(A). Dkt. No. 25 at 7. Ray correctly argues that the Commissioner "attempts to expand on the ALJ's rationale" (Dkt. No. 26 at 2), which violates *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943). Accordingly, the Court does not consider the Commissioner's argument regarding duration.

6

did she "willy-nilly" state that Dr. Ungar-Sargon's opinion was conclusory. Rather, she determined that Dr. Ungar-Sargon's opinion was conclusory because "it did not set forth the elements of listing 1.04 that the claimant's back impairment meets," and "Dr. Ungar-Sargon [did] not cite any clinical findings supporting his opinion." R. at 13. These statements are true. The full extent of Dr. Ungar-Sargon's discussion of listing 1.04(A) follows: "Enclosed please find a copy of my medical records on this patient. He suffers from chronic lumbar syndrome and had undergone major surgery with no improvement and meets the listing requirements for section 1.04A." Dkt. No. 17-8 at 308.

"An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician . . . as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Skarbet v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (internal citations and quotations omitted). That happened here. The ALJ gave no weight to Dr. Ungar-Sargon's opinion regarding listing 1.04(A) and provided an adequate explanation for the weight she gave to his determination. She further noted that she gave "great weight" to the state agency consulting physicians, who examined listing 1.04 and determined that Ray was not disabled. *See* R. at 17.

Ray also perfunctorily states that "the ALJ never sought an expert's opinion as to whether any of the evidence could support a finding of equivalency." Dkt. No. 24 at 17. As just noted above, the ALJ gave "great weight" to the opinions of the state agency medical consultants. R. at 17. Both doctors considered whether Ray's impairments met or equaled listings 1.02 and 1.04. R. at 57 & 76, respectively. Additionally, both doctors concluded that Ray was not disabled. R. at 61 (Dr. Corcoran's assessment); R. at 80 (Dr. Sands's assessment). Those determinations "conclusively establish" that they had considered the question of medical

7

equivalence and determined that Ray did not meet or equal any listing. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (State agency forms "conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. The ALJ may properly rely on the opinion of these medical experts. So, substantial evidence supports a finding that [plaintiff] did not meet or equal a listing.") (internal citations and quotations omitted); Social Security Ruling ("SSR") 17–2p. Therefore, the ALJ did not need to seek additional expert opinion on the issue.

There is, however, one condition under which the ALJ would have been required to obtain additional expert opinion regarding whether a claimant's impairments met or equaled a listing. Under Social Security Ruling 96–6p, which was in place at the time of the ALJ's decision, but has since been rescinded, an ALJ "must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96–6p. Ray does not point to any additional evidence that was not evaluated by the state agency consulting physicians that would have established that his impairments equal a listing. Accordingly, the ALJ was not required to obtain an updated medical expert's opinion and could properly rely on the expert opinions provided by the consulting physicians. Consequently, the ALJ did not err by failing to seek additional expert opinion on the issue of equivalency.

### B. Ray's Work History and Subjective Complaints

The ALJ found "that [Ray's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity,

persistence and limiting effects of these symptoms [was] not entirely credible." R. at 14. She noted in her opinion that Ray did not sit during the hearing, instead alternating between "standing hunched over with one hand on his cane and the other hand on the table and crouching down with his head a little above the table." R. at 17. She acknowledged that he testified that he felt most comfortable while crouching and stated that "none of the claimant's treatment providers noted the claimant's unusual posture," determining that his "presentation at the hearing was grossly inconsistent with his comments to his pain management physician . . . that the medications were helping his pain levels a lot." *Id.* She also noted that Ray testified that he has not done any household chores since the alleged onset date, but that "such extreme limitations of the claimant's activities [were] not supported by the claimant's medical records, including the clinical findings." *Id.*

Ray argues that the ALJ's credibility determination was inadequate because it did not properly consider his work history or subjective complaints. Ray complains that the ALJ "acknowledge[d] that [he] had a good work history but then minimized" that finding, Dkt. No. 24 at 18, and "ignored significant objective evidence and testimony from Ray which supported the intensity and persistence of pain and weakness and limiting effects therefrom that he claimed," Dkt. No. 26 at 8. Specifically, Ray contends that the ALJ ignored "the same evidence that [she] ignored when she evaluated whether Ray met Listing 1.04[(A)]."[5] Dkt. No. 26 at 8 n. 45. He also claims that the ALJ did not cite to examples of "'normal' neurological findings" or put in context statements that Ray made to his treating physicians regarding the relief

---

[5] The Court notes that Ray said the ALJ ignored the following evidence in her analysis of listing 1.04(A): evidence of Ray's lumbar fusion resulting in chronic lumbar syndrome, his positive straight leg raising test results, an EMG dated September 24, 2013, that showed chronic lumbar radiculopathy, which was worse on his left side, and that he used a cane in his dominant hand. Dkt. No. 24 at 16-17.

medications provided him from pain. Dkt. No. 26 at 20 & 21-22, respectively. In addition, he points to two medical records containing reference to leaning, crouching, or slouching to relieve pain. Dkt. No. 24 at 21 (citing R. at 198; 237). Ray concludes that the ALJ "does not provide a logical bridge between the evidence and her conclusion, and therefore, there is an insufficient basis upon which to uphold the ALJ's determination of Ray's credibility." Dkt. No. 24 at 20.

As the ALJ correctly acknowledged under the standard that applied at the time,[6] if a claimant has a medically determinable impairment that is reasonably expected to produce pain, then the ALJ must evaluate the credibility of the claimant's testimony regarding the extent of that pain. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations," *see* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). Additionally, because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, an ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and

---

[6] S.S.R. 96-7p has been superseded by S.S.R. 16-3p, which the agency explained "eliminate[d] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character."

must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

The ALJ did not ignore evidence of Ray's lumbar fusion surgery, chronic lumbar syndrome, positive straight leg raising test results, EMG showing chronic lumbar radiculopathy, which was worse on his left side, or the fact that he used a cane. As previously noted, she discussed each of these in her RFC discussion, which also contains her discussion of Ray's credibility. *See* R. at 15-17. In addition, the ALJ cited several instances in the medical record where Ray's neurological findings were normal. *See*, *e.g.*, R. at 15-16 (citing R. at 285, 296, and 342). She also included almost every statement that Ray points to in his brief that he made to his treating physicians regarding his pain and the effectiveness of medications in treating it. *See* R. at 15-16 (citing R. at 283, 287, 299, 337, 339,[7] 341, and 344); *cf.* Dkt. No. 26 at 20-22 (Ray's citations to the same record evidence). Notwithstanding Ray's assertion to the contrary, the ALJ framed these statements in their proper context. In each instance, she pointed out that Ray reported to his physician that he had continued pain, but also indicated that medication relieved it. She noted, for example, that Ray "reported that the medication helped his back pain though he continued to have pain." R. at 16 (citing R. at 344). It appears from the record that medication managed Ray's pain while it was in his system, but that he continued to experience pain when it wore off. That is the context in which the ALJ discussed the medications' effectiveness in treating Ray's pain.

The ALJ did not, however, refer to either medical record referencing Ray's preference to lean, crouch, or slouch to relieve pain. The ALJ "is not required to address every piece of

---

[7] Ray refers to "R. at 333, Page ID 403," which is incorrect. The correct citation to Page ID 403 is R. at 339.

11

evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176 (citations omitted). She has done so. As noted above, the ALJ stated that "none of the claimant's treatment providers noted the claimant's unusual posture." R. at17. Despite her lack of recitation to the two medical records to which Ray refers, the ALJ's statement remains true: Ray has not pointed to any medical record where Ray's treating providers observed him hunched over, leaning on both hands or crouching with his head a little above table height.

The ALJ also stated that she did not find that Ray's daily activities were limited to the extent that he testified. To support her conclusion, the ALJ noted that no treating physician had imposed such restrictions on Ray's daily activities.

In sum, the ALJ made a credibility determination that "contain[s] specific reasons for the credibility finding," and she has supported those reasons with evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citation omitted). Furthermore, the Court understands the reasoning behind the ALJ's decision. *Id.* (credibility determination "must be specific enough to enable the claimant and a reviewing body to understand the reasoning").

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 9/12/17

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification